# United States Court of Appeals
*for the*
# Fifth Circuit

Case No. 26-10080

TIM GOODEN,

*Plaintiff-Appellant,*

v.

LHOIST NORTH AMERICA OF TEXAS, L.L.C.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS IN CASE NO. 4:24-CV-750, MARK TIMOTHY PITTMAN, U.S. DISTRICT JUDGE

## BRIEF FOR PLAINTIFF-APPELLANT

BRIAN P. SANFORD
ELIZABETH J. SANFORD
EMMA HOFFMAN
SANFORD FIRM
*Attorneys for Plaintiff-Appellant*
2711 Hibernia Street
Dallas, Texas 75204
(214) 717-6653
bsanford@sanfordfirm.com
esanford@sanfordfirm.com
ehoffman@sanfordfirm.com

COUNSEL PRESS
A Proceed Service
The Appellate Experts®
(800) 4-APPEAL • (815381)

## 1. CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir Rule 28.2.1 have an interest in the outcome of this case. These representations are made for the judges of this court to evaluate possible disqualification or recusal.

| **Appellees:** | **Counsel for Appellees:** |
|---|---|
| Lhoist North America of Texas, L.L.C. | Talley Parker of Jackson Lewis, P.C. Dallas, TX |

| **Appellants:** | **Counsel for Appellants:** |
|---|---|
| Tim Gooden | Brian Sanford of Sanford Firm Dallas, TX |
| Tim Gooden | Elizabeth Sanford of Sanford Firm Dallas, TX |
| Tim Gooden | Emma Hoffman of Sanford Firm Dallas, TX |

*s/Brian Sanford*
Brian Sanford

## STATEMENT REGARDING ORAL ARGUMENT

This case presents important questions of whether adverse actions such as denial of a promotion to a lead position, a suspension, or reduced hours are sufficient to be adverse actions under *Hamilton* and *Muldrow*. These and other issues in the case are appropriate for oral argument.

## TABLE OF CONTENTS


**Page**

CERTIFICATE OF INTERESTED PERSONS .................................................. i

STATEMENT REGARDING ORAL ARGUMENT .......................................... ii

TABLE OF AUTHORITIES ........................................................................ v

STATEMENT OF JURISDICTION.................................................................. 1

STATEMENT OF THE ISSUES..................................................................... 1

STATEMENT OF THE CASE........................................................................ 2

A. Factual Background ........................................................................ 2

B. Procedural History .......................................................................... 9

SUMMARY OF THE ARGUMENT ............................................................ 10

STANDARD OF REVIEW ........................................................................13

ARGUMENT ............................................................................................ 14

I. Mr. Gooden Presented Sufficient Evidence to Support a Prima Facie Case of Discrimination................................................ 14

A. The District Court Overlooked the Fleet Supervisor Position......................................................................................15

B. The District Court Applied an Incorrect Harm Standard ...........................................................................................17

C. Mr. Gooden Offered Sufficient Comparator Evidence.............19

II. Mr. Gooden Offered Sufficient Evidence to Support Prima Facie Case for Retaliation ............................................................. 23

A. The District Court Overlooked Mr. Gooden's April 2024 Protected Activity ............................................... 24

B. Lhoist Only Determined Mr. Gooden's Conduct Was a Problem After He Engaged In Protected Activity ................... 26

III. Mr. Gooden Offered Sufficient Evidence of Pretext......................... 26

A. The District Court Erred in Resolving Disputed Facts Against Mr. Gooden .......... 27

B. The Reasons Lhoist Offered for Disciplining Mr. Gooden are not Credible .......... 29

C. Cat's Paw Theory .......... 30

D. The "Disruptive" Termination Pattern Supports Further Inference of Pretext .......... 31

E. The Suspicious Timing and Circumstances of Mr. Gooden's Termination Support an Inference of Pretext .......... 32

IV. The McDonnell Douglas Framework Does Not Exhaust the Available Modes of Proof .......... 33

CONCLUSION AND PRAYER .......... 35

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahmed v. Johnson*,
752 F.3d 490 (1st Cir. 2014) .......... 21, 32

*Allen v. United States Postal Serv.*,
63 F.4th 292 (5th Cir. 2023) .......... 21, 23

*Ames v. Ohio Dep't of Youth Servs.*,
605 U.S. 303 (2025) .......... 27, 34

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 13, 14, 23

*Autry v. Fort Bend Indep. Sch. Dist.*,
704 F.3d 344 (5th Cir. 2013) .......... 16

*Brown v. Wal-Mart Stores E., L.P.*,
969 F.3d 571 (5th Cir. 2020) .......... 14, 24, 26

*Burlington N. & Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006) .......... 33

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 13

*City of Huntsville*,
74 F.4th 646 (5th Cir. 2023) .......... 33

*Dollis v. Rubin*,
77 F.3d 777 .......... 18

*Evans v. City of Houston*,
246 F.3d 344 (5th Cir. 2001) .......... 24, 25

*Feist v. La., Dep't. of Justice, Office of the Att'y Gen.*,
730 F.3d 450 (5th Cir. 2013) .......... 24

*Fisher v. Lufkin Indus., Inc.*,
847 F.3d 752 (5th Cir. 2017) .......... 31

*Fleming v. Methodist Healthcare Sys. Of San Antonio, Ltd. L.L.P.*,
No. SA-21-CV01234-XR, 2024 WL 1055120 (W.D. Tex. Mar. 11, 2021) ............ 19

*Garcia v. Prof'l Contract Servs., Inc.*,
938 F.3d 236 (5th Cir. 2019) ............ 24, 33

*Gee v. Principi*,
289 F.3d 342 (5th Cir. 2002) ............ 26

*Guzman v. Allstate Assurance Co.*,
18 F.4th 157 (5th Cir. 2021) ............ 13

*Hamilton v. Dallas County*,
79 F.4th 494 (5th Cir. 2023) ............ 11, 17, 18

*Hittle v. City of Stockton*,
145 S. Ct. 759 (2025) ............ 34

*Int'l Bhd. of Teamsters v. United States*,
431 U.S. 324 (1977) ............ 20

*Laxton v. Gap Inc.*,
333 F.3d 572 (5th Cir.2003) ............ 14

*Lee v. Kan. City S. Ry. Co.*,
574 F.3d 253 (5th Cir. 2009) ............ 21

*Lyons v. Katy Indep. Sch. Dist.*,
964 F.3d 298 (5th Cir. 2020) ............ 25

*Martin v. J.A.M. Distrib. Co.*,
674 F. Supp. 2d 822 (E.D. Tex. 2009) ............ 30

*McCoy v. City of Shreveport*,
492 F.3d 551 ............ 18

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ............ 32, 34

*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024) ............ 11, 17, 18

*Nall v. BNSF Ry. Co.*,
917 F.3d 335 (5th Cir. 2019) ............ 34

*Nicholson v. Securitas Sec. Servs. USA, Inc.*,
830 F.3d 186 (5th Cir. 2016) ........................................................................28

*O'Neil v. AT & T Corp.*,
208 F.3d 1007 (5th Cir. 2000)........................................................................20

*Pegram v. Honeywell, Inc.*,
361 F.3d 272........................................................................................... 18

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000) ...............................................................................Passim

*Royal v. CCC & R Tres Arboles, L.L.C.*,
736 F.3d 396 (5th Cir. 2013)...................................................................... 14, 24

*Shackelford v. Deloitte & Touche, LLP*,
190 F.3d 398 (5th Cir. 1999)...................................................................... 21, 23

*Tex. Dep't of Cmty. Affairs v. Burdine*,
450 U.S. 248 (1981) ................................................................................. 15

*Turner v. Baylor Richardson Med. Ctr.*,
476 F.3d 337 (5th Cir. 2007) ........................................................................20

*Watkins v. Tregre*,
997 F.3d 275 (5th Cir. 2021)......................................................................14, 23

*Zamora v. City Of Houston*,
798 F.3d 326 (5th Cir. 2015) ........................................................................30

**Statutes**

28 U.S.C. § 1291............................................................................................ 1

28 U.S.C. § 1331 ............................................................................................ 1

42 U.S.C. § 1981........................................................................................ 1, 9

**Rules**

Fed. R. App. P. 32(f) ....................................................................................... 37

Fed. R. Civ. P. 56 ..........................................................................................34

Fed. R. Civ. P. 56(a)...................................................................................13, 27

Federal Rules of Appellate Procedure 28 and 32(g) ............................................. 37

Rule 401 of the Federal Rules of Evidence ........................................................... 34

**Regulations**

49 C.F.R. § 392.3 ............................................................................................ 5

## STATEMENT OF JURISDICTION

The United States District Court for the Northern District of Texas had subject-matter jurisdiction over this action because Plaintiff-Appellant's claims arise under the Civil Rights Act of 1866, 42 U.S.C. § 1981, presenting a federal question. *See* 28 U.S.C. § 1331. This Court has appellate jurisdiction under 28 U.S.C. § 1291 over the appeal from the District Court's final judgment. The District Court entered its Memorandum Opinion & Order granting summary judgment and Final Judgment on January 23, 2026. ROA.2904-17. Plaintiff-Appellant timely filed a Notice of Appeal on January 27, 2026. ROA.2918-19.

## STATEMENT OF THE ISSUES

I. Is the summary judgment evidence sufficient to raise disputed facts in a race discrimination case?

II. Is the summary judgment evidence sufficient to raise disputed facts in a retaliation case?

## STATEMENT OF THE CASE

### A. Factual Background

Lhoist North America of Texas, L.L.C. is a subsidiary of a Belgium conglomerate that mines and distributes lime products. ROA.1693. Of the forty-four drivers at the Hurst Terminal in the five years before Mr. Gooden's suit, more than half were Black. ROA.1568-78. Every supervisor and manager overseeing the Hurst Terminal was White. ROA.1260.

Lhoist engaged in widespread discrimination against Black employees. ROA.1261, 1285. It consistently assigned Black drivers older, broken-down trucks while giving newer trucks to non-Black drivers with less seniority. ROA.1261, 1270, 1272. It monitored Black drivers more closely with video cameras. ROA.1261, 1276, 1286. It disproportionately assigned Black drivers the last load of the day, lengthening their shifts and making it harder to complete required trailer-cleaning. ROA.1261, 1269, 1285.

Lhoist hired Mr. Gooden, who is Black, as a truck driver in 2005 and assigned him to its Hurst Terminal. ROA.1298-99. Lhoist evaluated Mr. Gooden's performance favorably year after year for nearly two decades. ROA.1260, ROA.1506:21-23. He was widely recognized as the most knowledgeable driver at the

terminal, training other drivers and even managers, and was "well-respected for his knowledge and leadership." ROA.1272, 1275, 1282, 1290.

Over the course of his career, Mr. Gooden proposed several roles to Lhoist supervisors, each of which Lhoist implemented and then gave to less-experienced White employees. The first was an additional dispatch position, which would have provided Mr. Gooden with more hours; Lhoist gave it to Larry Amos, who is White. ROA.1319:3-1320:17, ROA.1312:7-8. When Mr. Gooden confronted his supervisor about it, the supervisor told him: "Tim, don't whip my ass.... I wish you and your brother-in-law [would] stop filling out for these jobs. No black man is going to get this position. Any position in the office." ROA.1314:13-1315:8. Lhoist later created a Site Coordinator role at Mr. Gooden's suggestion and gave it to Landys Moreland, another less-experienced White employee. ROA.1318:7-10. In 2022, Lhoist created a Fleet Coordinator role Mr. Gooden had proposed and gave it to Greg Walls, a White driver with four fewer years of experience and less education. ROA.1262, ROA.1324:10-1328:7.

In 2023, Lhoist filled the newly opened Fleet Supervisor position with Bryon Hamm, a White driver who had started at Lhoist in 2021. ROA.1262, ROA.1560-1571. At that point, Mr. Gooden had nineteen years of service at Lhoist, compared to

Mr. Hamm's two years. ROA.1262. Mr. Gooden had repeatedly told supervisors he wanted to be promoted. ROA.1262.

Lhoist's practice was to inform employees it wanted to promote that they should apply, and "applying could be just showing an interest in a position." ROA.1262, ROA.1546:6-22. Although Mr. Gooden constantly showed interest in promotions, Lhoist went directly to Mr. Hamm about the opportunity without discussing it with Mr. Gooden. ROA.1262. On October 20, 2023, Lhoist rejected Mr. Gooden's application for Regional Terminal Operations Manager and gave the position to Chris Clark, a White man hired externally. ROA.1265. Despite Mr. Gooden's good performance, education, leadership, and respect at Lhoist for almost two decades, Lhoist would not promote him in any capacity. ROA.1262-65, 1286.

Beginning in June 2023, Mr. Gooden orally complained multiple times to Quade Nye, a White manager, about race discrimination. ROA.1263. Mr. Nye responded that he did not see it. ROA.1263. On August 22, 2023, Mr. Gooden witnessed a verbal altercation between Kenton Waites (Black) and Neil Gregory (Black). ROA.1263-64. Mr. Gooden intervened, resolved it, and reported the incident to supervisor Cody Thomas. ROA.1263. Mr. Gooden then learned Lhoist had suspended Mr. Waites and contacted HR representative Ruby Sonnenberg to defend him. ROA.1263-64. Mr. Gooden believed managers Dusty Glass and Quade Nye

were targeting Mr. Waites, because he had seen them target Black men such as himself in the past. ROA.1411. On August 25, 2023, three days after Mr. Gooden defended Mr. Waites and two months after Mr. Gooden began orally complaining about race discrimination to Mr. Nye, Lhoist suspended Mr. Gooden, accusing him of "sleeping on the job." ROA.1264.

Lhoist trained and encouraged drivers to sleep in their trucks during downtime, as required by federal safety regulations prohibiting drowsy driving, *see* 49 C.F.R. § 392.3, and paid them for that time, as long as the work was completed as required by the customer. ROA.1260-61, 1287. Lhoist monitored Mr. Gooden's sleeping habits for over eighteen years, approved them, paid him for that time, and never disciplined him. ROA.1261. As instructed and encouraged by Lhoist, Mr. Gooden would often sleep in his truck while waiting for repairs or a tow truck. ROA.1261. Lhoist knew this and said nothing at the time because it had been standard practice and expected. ROA.1261. Mr. Gooden routinely changed his status to "on duty not driving" when resting, as trained. ROA.1264. This was never an issue until Mr. Gooden complained about race discrimination and stood up for his Black co-worker. ROA.1264. Lhoist did not announce any policy change concerning rest breaks until October 4, 2023, weeks *after* the suspension. ROA.1265, 1620-21.

On August 26, 2023, Mr. Gooden texted a group of Lhoist employees and managers that managers Mr. Nye and Dusty Glass had found a pretext to suspend him after he defended a Black man, and that Lhoist suspended him for behavior it had previously sanctioned. ROA.1411-16. On August 28, 2023, Mr. Gooden filed an EEOC charge alleging race discrimination. ROA.1420-23.

On September 1, 2023, Lhoist offered Mr. Gooden a "Last Chance Agreement" requiring him to admit wrongdoing. ROA.1427-28. Mr. Gooden refused to sign as written. ROA.1428. He proposed revisions, including promises by Lhoist "to abide by all employment laws" and "not setting [Mr. Gooden] up for failure, and not discriminating or retaliating against" him. ROA.1581-82. His supervisor, Bryon Hamm, initially signed the revised version, then scribbled out his signature. ROA.1264, 1582. Lhoist revoked the revised agreement but let Mr. Gooden return to work on September 11, 2023, without signing anything. ROA.1265.

After his suspension, Lhoist began assigning Mr. Gooden's loads to less-experienced White drivers. ROA.1265. Mr. Gooden's loads dropped from three to four per night to one per night, drastically cutting his pay. ROA.1265. Lhoist also continued to assign Mr. Gooden later shifts even after he complained of the potential dangers of sleep deprivation caused by the change. ROA.1337:13-1338:4,

ROA.1339:10-20, ROA.1455. On December 13, 2023, Mr. Gooden again complained in writing about ongoing discrimination and retaliation. ROA.1457-58.

During the first week of April 2024, mud at worksites required trucks to be towed in and out. ROA.1266. Lhoist assigned Mr. Gooden a truck with an unusable, unremovable tow strap on the side of the trailer. ROA.1266. Mr. Hamm gave Mr. Gooden another tow strap and told him to use it. ROA.1266. Mr. Gooden tied the usable strap to the front of his truck, as Lhoist instructed. ROA.1266. He used it that way for several days; Mr. Hamm, Mr. Thomas, and Mr. Clark all saw it and said nothing. ROA.1266, ROA.1344:1-1345:22.

On Friday, April 5, 2024, Mr. Gooden met with Mr. Hamm and Mr. Clark and told them that his schedule changes were the result of Mr. Nye discriminating and retaliating against him. ROA.1340:6-1341:16, ROA.1460. Three days later, on Monday, April 8, 2024, Mr. Clark confronted Mr. Gooden about the tow strap. ROA.1342:21-1344:17. Mr. Gooden explained that he had never received any instructions not to have the tow strap placed as it was, and he would have complied if he had known the rule. ROA.1344:1-15. Mr. Clark called Mr. Nye and sent Mr. Gooden home. ROA.1342:21-1344:17. Ms. Sonnenberg then called Mr. Gooden and told him he was suspended ROA.1347:23-25. Lhoist alleged Mr. Gooden reacted aggressively when confronted by Mr. Clark. ROA.1465-66. Mr. Gooden testified that

he remained calm during the conversation; he denies behaving aggressively or raising his voice. ROA.1348:16-19, ROA.1266. Although Lhoist's trucks were equipped with cameras and audio recording, and although a building camera with audio recording was nearby, Lhoist did not produce any audio recording supporting its account. ROA.1267.

The next day, April 9, 2024, Mr. Gooden emailed Darin Wilson, the director of Human Resources, complaining of discrimination and retaliation. ROA.1462-63. Two days later, on April 11, 2024, Lhoist terminated him. ROA.1465-66. Lhoist's stated reason was because Mr. Gooden "failed to follow proper procedure for storing your tow strap along with displaying overly aggressive and confrontational behavior towards management when you were addressed." ROA.1465-66. Mr. Clark and Mr. Nye both testified Lhoist fired Mr. Gooden for his alleged outburst and not for his tow strap. ROA.1473:22-1474:16, ROA.1549:25-1552:8.

Within days of Mr. Gooden's termination, Lhoist confronted a non-Black driver, Ballard Kalahiki, with a tow strap tied to the front of his truck, similar to Mr. Gooden. ROA.1473:22-1474:1. Lhoist did not discipline Mr. Kalahiki; it only "coached" him. ROA.1473:22-1474:1. When asked to explain the difference in treatment, Mr. Clark could not point to any difference in the tow-strap conduct; he pointed only to Mr. Gooden's alleged "outburst." ROA.1473:22-1474:16. Mr.

Gooden denies the outburst. ROA.1266, ROA.1348:16-19. Regardless, several non-Black drivers, including Richard Collins, Greg Walls, Coy Jones, Roy Karr, and Dustin Getz, have raised their voices at supervisors and not been disciplined or terminated. ROA.1267.

Lhoist terminated Mr. Gooden for his "unprofessional and disruptive behaviors." ROA.1465-66. In the five years before Mr. Gooden's termination, Lhoist fired only four employees for being "disruptive" outside their initial evaluation period: Tim Rogers, Mr. Gooden, Jonathan Harvey, and Kenton Waites. ROA.1609-10, 1629-67, 1687-88. All four had previously opposed race discrimination. ROA.1266, 1282, 1287, 1294. By contrast, Lhoist's other terminations in that period were for objectively measurable conduct: failed drug tests, multiple unexcused absences, MLA expiration, safety violations, fuel theft, or poor performance during initial evaluation. ROA.1629-80.

Lhoist replaced Mr. Gooden with Bryan Owens, a White driver. ROA.1267.

### B. Procedural History

On August 7, 2024, Mr. Gooden filed suit against Lhoist for discrimination and retaliation in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981. ROA.18-48. Lhoist moved for summary judgment on October 31, 2025. ROA.632-34. Mr. Gooden

filed his response on November 24, 2025 (ROA.1252-53) and Lhoist filed its reply on December 8, 2025 (ROA.1721-39).

On January 23, 2026, the District Court granted summary judgment on all counts. ROA.2904-17. Mr. Gooden timely appealed on January 27, 2026. ROA.2150-51.

---

## SUMMARY OF THE ARGUMENT

The District Court committed multiple legal errors in granting summary judgment, each of which independently requires reversal.

First, the District Court overlooked entire categories of Mr. Gooden's evidence. The Court's opinion does not address the Fleet Supervisor position Lhoist gave to Bryon Hamm, a White driver Mr. Gooden had personally trained, with fifteen fewer years of experience. The Court did not address Lhoist's disparate assignment of older, broken-down trucks to Black drivers; the disparate monitoring with video cameras; the disparate assignment of the last load of the day; or the systematic reassignment of Mr. Gooden's loads to less-experienced White drivers. The Court did not address Mr. Gooden's oral complaints of race discrimination in June 2023, or his oral complaints of race discrimination in April 2024, which preceded his April

8, 2024, suspension by three days and his April 11, 2024, termination by six days. This temporal proximity is sufficient to support a prima facie case for retaliation.

The District Court ignored the "disruptive" termination pattern. The only four non-probationary employees Lhoist fired for being "disruptive" had previously complained of race discrimination. Every other Lhoist termination was for objective conduct (drug tests, attendance, safety violations). This stark pattern is pretext evidence. The District Court ignored Mr. Gooden's cat's-paw evidence that Mr. Clark and Mr. Nye acted with retaliatory motive. Each of these omissions is, by itself, reversible.

Second, the District Court applied an incorrect standard for determining harm. The Court found that Lhoist's denial of the Fleet Lead role and other opportunities were not actionable because they did not "meaningfully alter the terms of employment." ROA.2909. But under *Muldrow v. City of St. Louis*, 601 U.S. 346, 354-55 (2024), and *Hamilton v. Dallas County*, 79 F.4th 494, 502-04 (5th Cir. 2023) (en banc), Title VII (and the 1866 Act, which uses no narrower text) protects against *any* disadvantageous change in a term, condition, or privilege of employment, without any heightened-harm requirement. Mr. Gooden's testimony that the additional responsibilities would have increased his hours and pay, more than clears that bar.

Third, the District Court repeatedly resolved disputed facts in Lhoist's favor. The Court treated the alleged April 2024 "outburst" as established fact. But Mr. Gooden testified he did not raise his voice or behave aggressively. Lhoist did not produce any audio of the incident to support their allegations, despite having cameras. A swearing match between an employee's testimony and his employer's witnesses is a disputed fact for the jury. The Court similarly treated the time-theft allegation, the policy-change history, and the Last Chance Agreement (LCA) terms as undisputed, when Mr. Gooden presented competent evidence disputing all three.

Fourth, the District Court misapplied the "similarly situated" doctrine. The Court rejected Mr. Kalahiki as a comparator because he lacked Mr. Gooden's prior discipline. But Mr. Gooden alleges that prior discipline—the August 2023 suspension and the LCA—was itself discriminatory and retaliatory. The comparator standard must not be so rigid as to disqualify comparators because they were not subject to protect multiple discriminatory acts. To insist that a comparator must share a plaintiff's allegedly tainted disciplinary history in every case is to make summary judgment automatic where the employer disciplines the plaintiff at least once, even if discriminatorily, before the challenged action. At minimum, it is a fact issue whether the prior discipline counts. Nevertheless, if Mr. Gooden's termination

is not protected from discrimination or retaliation, prior harms are protected under *Hamilton* and *Muldrow*.

Each of these errors necessitate reversal.

---

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo. *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021). Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In considering a motion for summary judgment, this Court must draw all reasonable inferences in favor of the nonmoving party, refrain from making credibility determinations or weighing the evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmovant. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The movant is entitled to

summary judgment only if no rational jury could find for the nonmoving party when considering the entire record. *See id.* at 250.

---

## ARGUMENT

### I. Mr. Gooden Presented Sufficient Evidence to Support a Prima Facie Case of Discrimination.

Evidence of discrimination is established either through direct or circumstantial evidence. *Laxton v. Gap Inc.,* 333 F.3d 572, 578 (5th Cir.2003). Employment claims based on circumstantial evidence under the Civil Rights Act of 1866 are analyzed under the *McDonnell Douglas* burden-shifting framework. *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020). A plaintiff's prima facie case, combined with sufficient evidence that the employer's explanation is pretextual, may permit a factfinder to conclude that the employer unlawfully discriminated. *Reeves*, 530 U.S. at 148.

Under the framework, a prima facie case of discrimination requires showing: (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action; and (4) treatment less favorable than a similarly situated employee outside the protected group. *Watkins v. Tregre*, 997 F.3d 275, 282 (5th Cir. 2021); *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013). "The

burden of establishing a prima facie case of disparate treatment is not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Lhoist does not dispute the first three elements except possibly Mr. Gooden's qualifications for the Terminal Operations Manager position. The District Court states that only the first element, that Mr. Gooden is Black, is undisputed. ROA.2908. However, Lhoist does not contest that Mr. Gooden was qualified for his position or any of the positions he sought, except possibly the Terminal Operations Manager position for which Lhoist claims he did not "fit the bill" and was not "clearly more qualified." ROA.681.

**A. The District Court Overlooked the Fleet Supervisor Position.**

The District Court's discussion of Mr. Gooden's failure-to-promote claims is limited to the "Amos role," the 2020 "Moreland role,"[1] the 2022 "Walls role" (Fleet Lead position), and the "Clarke role" (Terminal Operations Manager). ROA.2908-10. The opinion does not address Lhoist's 2023 decision to promote Bryon Hamm to Fleet Supervisor over Mr. Gooden. *See generally* ROA.2904-16. The Fleet Supervisor role is a supervisory position with managerial authority and considered a

[1] Mr. Gooden acknowledged that the 2017 and 2020 roles were time-barred and were only offered as evidence of Lhoist's pattern of promoting less-qualified White employees over Mr. Gooden.

promotion. ROA.1560:23-25. Mr. Gooden had nineteen years of service at the time compared to Mr. Hamm's two years. ROA.1262, ROA.1560:17-25.

Lhoist attempts to argue Mr. Gooden did not formally apply, but Mr. Gooden repeatedly expressed interest in being promoted, and Mr. Nye (the Terminal Operations Manager) testified that Lhoist's practice was to inform employees it wanted to promote and that "applying could be just showing an interest in a position." ROA.1546:6-8. Lhoist specifically reached out to Mr. Hamm and not Mr. Gooden, despite Mr. Gooden consistently "showing interest." ROA.1262. The District Court's failure to address this claim was reversible error.

Mr. Gooden satisfieS a failure-to-promote prima facie case. Lhoist promoted a less qualified employee outside of Mr. Gooden's protected class over Mr. Gooden; this is all that is necessary for the prima facie case. *See Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 347 (5th Cir. 2013) (failure-to-promote prima facie case satisfied where promotion went to person outside the protected class). Even if Lhoist were to argue that this claim should be barred because Mr. Gooden did not submit an official application (because Lhoist specifically sought out Mr. Hamm for the role and ignored Mr. Gooden when he showed interest in being promoted), the repeated denial of Mr. Gooden for a position along with the statement years before that Lhoist

would not promote a Black employee to the office shows that an application would have been futile.

### B. The District Court Applied an Incorrect Harm Standard.

In *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), the Supreme Court rejected the heightened-harm requirement the District Court applied. "The text of Title VII imposes no such requirement." *Id.* at 354. Title VII, and by extension, the 1866 Act, does not require harm be *substantial*, *significant*, *serious*, "or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* Examples of qualifying harm may include differences "in money, time, satisfaction, schedule, convenience, commuting costs or time, prestige, status, career prospects, interest level, perks, professional relationships, networking opportunities, effects on family obligations, or the like." *Muldrow*, 601 U.S. at 365 (Kavanaugh, J., concurring). The harm does not have to rise to economic harm. *Id.* at 354. A position with additional responsibilities that might bring more pay satisfies the minimum harm required.

The Fifth Circuit, sitting en banc, reached the same conclusion as in *Muldrow* months earlier in *Hamilton v. Dallas County*, 79 F.4th 494, 502-04 (5th Cir. 2023) (en banc). "[T]o plead an adverse employment action, a plaintiff need only allege facts plausibly showing discrimination in hiring, firing, compensation, or in the 'terms,

conditions, or privileges' of his or her employment." *Id.* at 502-03. "[T]he statutory phrase, 'terms, conditions, or privileges of employment,' is broad" and "is not limited to 'economic' or 'tangible' discrimination." *Id.* at 503. The *Hamilton* Court found that denial of seniority-based shift scheduling because of their sex was sufficient to support a claim. *Id.* at 503-04.

Applied here, the Fleet Lead/Coordinator role Mr. Gooden proposed was given to Greg Walls, a less-experienced and less-educated White driver. ROA.1262. Mr. Gooden testified that the position would have provided more assignments, and thereby more hours and more pay, as well as greater authority. ROA.1324:10-1325:9. The denial of a lead position affects "money, time,… satisfaction,… prestige, status, career prospects,… [and] professional relationships." *Muldrow*, 601 U.S. at 365 (Kavanaugh, J., concurring). The District Court's contrary conclusion, that the loss of those opportunities was not actionable because it did not "meaningfully alter" the terms of employment, cannot be reconciled with *Muldrow* and *Hamilton*, which abrogated the "ultimate employment decision" and significant-harm requirements previously applied. *Hamilton*, 79 F.4th at 502 (abrogating *Pegram v. Honeywell, Inc.*, 361 F.3d 272, *Dollis v. Rubin*, 77 F.3d 777, *McCoy v. City of Shreveport*, 492 F.3d 551, and other earlier-required-harm cases).

The District Court dismissed Mr. Gooden's Fleet Lead (Walls) claim on the ground that the role "involved additional responsibilities rather than a separate job or promotion" and did "not constitute an adverse employment action." ROA.2909-10. The Court applied a heightened-harm standard requiring a "the challenged action must meaningfully alter the terms of employment and injure the employee." ROA.2909 (citing *Fleming v. Methodist Healthcare Sys. Of San Antonio, Ltd. L.L.P.*, No. SA-21-CV01234-XR, 2024 WL 1055120, at *12 (W.D. Tex. Mar. 11, 2021)). The Court cited a District Court opinion which predated both *Hamilton* and *Muldrow* to support this contention.

The same analysis applies to Lhoist's other actions affecting Mr. Gooden's working conditions: assigning him older, broken-down trucks, ROA.1261; monitoring him more intensively, ROA.1261; assigning him the last load of the day more frequently, ROA.1261; reassigning his loads to less-experienced White drivers, ROA.1265; and cutting his deliveries down to one per night, ROA.1265. Each of these affected the terms or conditions of his employment under *Muldrow* and *Hamilton*. The District Court never addressed any of them.

**C. Mr. Gooden Offered Sufficient Comparator Evidence.**

Neither Lhoist nor the District Court dispute that the persons promoted to the Fleet Lead and Fleet Supervisor positions are sufficient comparators. For a

failure to promote, the comparator is not difficult; it is simply the person who received the position. *See Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 345 (5th Cir. 2007). As for the Fleet Lead position, Mr. Gooden testified he had more experience and education than Walls. ROA.1262. Mr. Gooden had also been recognized for his knowledge and leadership. ROA.1272, 1275, 1282, 1290. A fact issue exists as to Lhoist's decision on this position.

Lhoist does not contest that Mr. Gooden is more qualified than Mr. Hamm for the Fleet Supervisor position. Nor can it, with Mr. Gooden having over fifteen more years of experience than Mr. Hamm. ROA.1262. Its only defense is that Mr. Gooden did not formally apply for the position. Mr. Gooden presents evidence of his interest and Lhoist's practice of affirmatively approaching a person for the position and accepting "showing interest" in a position as a sufficient application. ROA.1262, ROA.1546:6-22. Additionally, an application for a position is not necessary for a failure-to-promote claim when a consistently enforced discriminatory policy deters job applications. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 366 (1977). *See also O'Neil v. AT & T Corp.*, 208 F.3d 1007 (5th Cir. 2000). Lhoist rejected Mr. Gooden for every promotion for which he applied for; staffed only White managers and supervisors; and a manager previously told Mr. Gooden that Lhoist would never put a Black person in a managerial position. These facts, combined, show that Mr.

Gooden's application would have been a "futile gesture" because of Lhoist's "known and consistently enforced policy of discrimination," such that even if he did not apply, this should not have barred his failure-to-promote claim. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999); *see also Ahmed v. Johnson*, 752 F.3d 490 (1st Cir. 2014) (the "complete absence" of Black employees in an office supported a plaintiff's failure-to-promote claim when the plaintiff was deterred from applying). Because Mr. Gooden exceeds Mr. Hamm in experience and education, a fact issue exists for this position, as well.

Mr. Gooden agrees to no longer pursue his failure-to-promote claim as to the Regional Terminal Manager position in this case, but still presents this denial of the promotion as evidence of Lhoist's discriminatory policy that made Mr. Gooden's applications futile.

For disparate treatment in discipline, this Court asks whether a similarly situated employee under "nearly identical" circumstances was treated differently. *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009); *Allen v. United States Postal Serv.*, 63 F.4th 292, 302 (5th Cir. 2023). "Nearly identical" is not, however, "identical." *Lee*, 574 F.3d at 260. Differences that are not material to the employment decision do not defeat comparator status. *Id.*

Mr. Gooden offered Ballard Kalahiki as a comparator on the tow-strap incident. ROA.1711. Mr. Kalahiki, a non-Black employee, tied a tow strap to the front of his truck, which was the same conduct Lhoist cited as grounds for Mr. Gooden's termination. ROA.1688. Lhoist only coached Mr. Kalahiki in response. ROA.1473:22-1474:10, ROA.1465-66. The District Court refused to credit Mr. Kalahiki as a comparator on the basis that the evidence did not show "Kalahiki was also on a Last Chance Agreement, that he was previously suspended, or that he reacted similarly when approached." ROA.2911.

This reasoning is circular. Mr. Gooden's suspension and LCA are themselves alleged to be discriminatory and retaliatory. To say that he and Mr. Kalahiki are not similarly situated because of those acts makes the supposedly discriminatory discipline its own justification for treating future discrimination as nondiscriminatory. If this were the law, every employer would acquire summary-judgment immunity for any second adverse act after a first.

Likewise, the District Court's reliance on Mr. Gooden's "reaction" when approached about the tow strap is improper at this stage. Mr. Gooden denies behaving aggressively. ROA.1348:16-19, ROA.1266. That is a disputed fact for the jury. "Credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255..

At the very least, whether Mr. Kalahiki is sufficiently similar is a fact issue for the jury. *See Allen*, 63 F.4th at 297-98 (reversing where district court found comparator inquiry insufficient and ignored evidence creating fact disputes); *Watkins*, 997 F.3d at 286-87 (vacating summary judgment on comparator question). The Court also never addressed the other non-Black drivers Mr. Gooden identified as potential comparators (Richard Collins, Greg Walls, Coy Jones, Roy Karr, and Dustin Getz) who raised their voices at supervisors without being disciplined or terminated. ROA.1267.

Further, the fourth prong of the prima facie case can be satisfied by showing that the plaintiff was "replaced by someone outside" the protected class. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999). Lhoist replaced Mr. Gooden with Bryan Owens, a White driver. ROA.1267. The District Court did not address this in its discrimination analysis.

## II. Mr. Gooden Offered Sufficient Evidence to Support Prima Facie Case for Retaliation.

"A retaliation claim that is premised on a pretextual rationale for dismissal," meaning circumstantial evidence, is also "analyzed under the *McDonnell Douglas*

framework." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013). A plaintiff must first establish a prima facie case of retaliation. *Id.*

To establish a prima facie case of retaliation, a plaintiff must show: (1) protected activity; (2) an adverse employment action; and (3) a causal connection between the protected activity and adverse action. *Brown*, 969 F.3d at 577. The causation standard at the prima facia stage is less stringent than the causation inquiry at the pretext stage, which requires but-for causation. *Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 244 (5th Cir. 2019). *See also Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) ("but for" is not the proper legal standard for the prima facie inquiry). It is well established that a plaintiff may show a causal link between his protected activity and an adverse employment action by showing close timing between the two. *Id.* (citing *Feist v. La., Dep't. of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). The District Court assumed the first two elements were satisfied and dismissed only on the prima facie causal link. ROA.2916.

### A. The District Court Overlooked Mr. Gooden's June 2023 and April 2024 Protected Activity.

The District Court's retaliation analysis made no mention of Mr. Gooden's June 2023 and April 2024 complaints of race discrimination. ROA.2912-16. The Court measured temporal proximity by working backwards from the April 11, 2024

termination to the August 2023 EEOC charge, and found that eight-month gap too long under *Lyons v. Katy Indep. Sch. Dist.,* 964 F.3d 298 (5th Cir. 2020). ROA.2916.

The Court did not address retaliation for the June 2023 protected activity (ROA.1263) and the August 2023 suspension (ROA.1264). The Court also did not acknowledge Mr. Gooden's protected activity on April 5, 2024, when Mr. Gooden told Mr. Hamm and Mr. Clark that his schedule changes were the result of Mr. Nye discriminating and retaliating against him (ROA.1340:6-1341:16, ROA.1460) or on April 9, 2024, when Mr. Gooden sent Mr. Wilson an email complaining of continued discrimination and retaliation following his suspension. ROA.1462-63.

Two months separate Mr. Gooden's June 2023 complaints of race discrimination to Mr. Nye, and his suspension in August 2023. Three days separate Mr. Gooden's April 5, 2024, race discrimination and retaliation complaint to Mr. Clark from Mr. Clark's April 8, 2024, confrontation about the tow strap and Lhoist's same-day suspension. Six days separate Mr. Gooden's April 5, 2024, complaint from his April 11, 2024, termination. Two days separate Mr. Gooden's April 9, 2024, email to Mr. Wilson from his April 11, 2024, termination.

Any of these intervals is well within the four-month window the Fifth Circuit has held sufficient to establish a causal link. *Evans*, 246 F.3d at 354. This temporal

proximity should have supported a finding of a prima face case for retaliation and the District Court's failure to address these protected activities is reversible error.

### B. Lhoist Only Determined Mr. Gooden's Conduct Was a Problem After He Engaged In Protected Activity.

Lhoist did not decide it was an issue that Mr. Gooden was "sleeping on the job" until after he began complaining about race discrimination and defended Kenton Waites, a Black employee Mr. Gooden believed was being targeted by management for discriminatory reasons. ROA.1264. Lhoist did not decide that Mr. Gooden's tow strap was an issue until after he complained to Mr. Clark about race discrimination. ROA.1266, ROA.1344:1-1345:22. Lhoist would punish Mr. Gooden for previously allowed conduct immediately after he would complain about race discrimination. Even if there was no temporal proximity, this shifting attitude would still support an inference of retaliation.

## III. Mr. Gooden Offered Sufficient Evidence of Pretext.

"Pretext can be proven by any evidence that casts doubt on the credence of the employer's proffered justification." *Brown*, 969 F.3d at 578. "[A] factfinder may infer the ultimate fact of retaliation from the falsity of the explanation" for an adverse action. *Gee v. Principi*, 289 F.3d 342, 348 (5th Cir. 2002) (citing *Reeves*, 530 U.S. at 146–48); *see also Reeves*, 530 U.S. at 148 ("a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may

permit the trier of fact to conclude that the employer unlawfully discriminated."). At the summary judgment stage, "the plaintiff need only present sufficient evidence to create a 'genuine dispute as to' whether the employer's stated reason was pretextual." *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 323 (2025) (Thomas, J. concurring) (quoting Fed. Rule Civ. Proc. 56(a)).

### A. The District Court Erred in Resolving Disputed Facts Against Mr. Gooden.

The District Court repeatedly took Lhoist's account of disputed events as established. That alone requires reversal. *Reeves*, 530 U.S. at 150-51. The Court accepted as fact that when confronted, Mr. Gooden "became aggressive" and "started yelling, called the supervisor a liar, accused the supervisor of trying to get employees fired, and accused the supervisor of belittling employees." ROA.2911. Mr. Gooden testified that he did not raise his voice and remained calm. ROA.1348:16-19, ROA.1266. The Court did not acknowledge this dispute, much less resolve it for the nonmovant. Lhoist's trucks and buildings have cameras with audio, but Lhoist did not produce any audio that could have supported its claim. ROA.1267. Whether Mr. Gooden did react in an disruptive manner that might warrant discipline is a factual dispute the Court should have left to the jury.

The Court further referenced "60 hours worth of unauthorized breaks on the clock," as though that allegation were undisputed fact. ROA.2911. It is not. Mr.

Gooden and former driver Tim Rogers both testified that Lhoist trained and encouraged drivers to sleep when necessary, paid them for that time, and never disciplined Mr. Gooden over eighteen years for the same conduct. ROA.1260-61, 1287. Lhoist did not announce any policy change requiring prior notice for rest breaks until October 4, 2023, weeks after Mr. Gooden was suspended. ROA.1265, 1620-21.

Deviation from established policies or evaluation practices is evidence of discriminatory intent. *Nicholson v. Securitas Sec. Servs. USA, Inc.*, 830 F.3d 186, 191 (5th Cir. 2016). Lhoist's sudden recharacterization of nineteen years of training-compliant rest as "time theft," without prior notice of any policy change, is such a deviation, yet the District Court instead treated it as an undisputed legitimate ground for suspension. That was error.

The Court also did not address Mr. Gooden's evidence that he refused to return to work under Lhoist's LCA without reciprocal protections. ROA.2911. Mr. Gooden proposed revisions including Lhoist's agreement to "abide by all employment laws," "not setting [Mr. Gooden] up for failure, and not discriminating or retaliating against" him. ROA.1581-82. Mr. Hamm initially signed the revised LCA before scribbling out his signature. ROA.1264, 1582. A fact issue exists as to whether Mr. Gooden ever validly returned subject to the LCA, which Lhoist subsequently relied on to justify the April 2024 termination. ROA.1552:2-8 (Mr. Nye

testifying that, but for the LCA, Mr. Gooden would not have been terminated). The District Court's resolution of the LCA's applicability against Mr. Gooden without discussion was again resolution of a factual dispute that should have been reserved for a factfinder.

### B. The Reasons Lhoist Offered for Disciplining Mr. Gooden are not Credible.

Lhoist suspended Mr. Gooden in August 2023, two months after he complained of race discrimination to Mr. Nye, for behavior it had previously encouraged, paid him for, and never disciplined him over for eighteen years. ROA.1260-61, 1264, 1287. Lhoist did not formally announce a policy change requiring advance notice before resting until weeks after Mr. Gooden was already suspended. ROA.1265, 1620-21. The characterization of training-compliant rest as "theft", applied retroactively and only after Mr. Gooden complained of race discrimination, is "unworthy of credence." *Reeves*, 530 U.S. at 147. These disputed allegations were then used to justify the Last Chance Agreement, which in turn was used to justify Lhoist's termination of Mr. Gooden. ROA.1552:2-8.

Lhoist terminated Mr. Gooden in April 2024 ostensibly for tying a tow strap to the front of his truck, after Mr. Hamm, Mr. Thomas, and Mr. Clark had watched him do it for days without comment. ROA.1266, ROA.1344:1-1345:22, ROA.1465-66. When Mr. Kalahiki (non-Black) did the same thing days later, Lhoist only "coached"

him. ROA.1473:22-1474:10. Mr. Clark could not explain the disparity except by pointing to Mr. Gooden's alleged "outburst," (ROA.1473:22-1474:16) which Mr. Gooden disputes (ROA.1266, ROA.1348:16-19) and for which Lhoist failed to produce audio recordings of (ROA.1267). Lhoist's termination lists Mr. Gooden's tow strap as a reason for his termination (ROA.1465-66), but Mr. Nye testified Mr. Gooden was not disciplined for the tow strap (ROA.1549:25-1552:8). Pretext may be inferred where the defendant has provided inconsistent or conflicting explanations for its conduct at different times. *Martin v. J.A.M. Distrib. Co.*, 674 F. Supp. 2d 822, 841–42 (E.D. Tex. 2009) (collecting cases). Every allegation supporting Lhoist terminating Mr. Gooden is a factual dispute which should have been reserved for a factfinder and which made summary judgment inappropriate.

### C. Cat's Paw Theory

Even if Lhoist believed Mr. Clark's and Mr. Nye's claims that Mr. Gooden reacted aggressively, if those claims were false and made to retaliate against Mr. Gooden, that is still retaliation. *See Zamora v. City Of Houston*, 798 F.3d 326, 332 (5th Cir. 2015) ("If the supervisor is motivated by retaliatory animus, then the employer has violated Title VII."). Mr. Gooden had previously complained to Mr. Clark and Mr. Nye about discrimination. In fact, Mr. Gooden complained about race discrimination to Mr. Clark for the first time on Friday, April 5, 2024, and Mr. Clark

accused Mr. Gooden of having his tow strap tied incorrectly and reacting aggressively when reprimanded three days later, on Monday, April 8, 2024. Mr. Clark had witnessed the tow strap without saying anything, until Mr. Gooden complained about race discrimination against him. ROA.1266, ROA.1344:1-1345:22. This supports an inference that Mr. Clark acted with a retaliatory motive. The same reasoning applies to Mr. Nye, who was the subject of Mr. Gooden's complaints on April 5, 2024, and who participated in the decision to terminate him. ROA.1340:6-1341:16, ROA.1473:1-3. Even if Mr. Gooden did react aggressively (which he disputes), if Mr. Clark only instigated this confrontation or Mr. Nye only escalated to termination in retaliation for Mr. Gooden's protected activity, this would still satisfy the cat's paw theory of liability. *See Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752 (5th Cir. 2017), as revised (Mar. 30, 2017) (finding the plaintiff satisfied the but-for causation prong using the cat's paw theory of liability, even where the plaintiff engaged in the alleged misconduct, when the supervisor initiated the investigation in retaliation).

### D. The "Disruptive" Termination Pattern Supports Further Inference of Pretext.

Mr. Gooden presented evidence that every employee terminated by Lhoist in the past five years for being "disruptive" (Mr. Rogers, Mr. Gooden, Mr. Harvey, and Mr. Waites) had previously complained about race discrimination. ROA.1266, 1282, 1287, 1294, 1609-10, 1629-67, 1687-88. Every other termination Lhoist made in that

period was for objective, verifiable conduct: failed drug tests, multiple unexcused absences, MLA expiration, safety violations, fuel theft, or poor performance during the initial evaluation period. ROA.1629-80. This is not coincidence; it is a pattern. The Supreme Court has recognized that "[a]n employer's general policy and practice with respect to minority employment can be significant in assessing discriminatory animus." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804–05 (1973); *Ahmed*, 752 F.3d at 503 (employer's history of bypassing protected-class employees for promotion was powerful evidence of animus). The same principle applies here: Lhoist's pattern of using the vague "disruptive" label exclusively against employees who complained of discrimination (i.e. employees who "disrupted" the status quo of discrimination) is powerful circumstantial evidence that the label is a pretext for retaliation. Lhoist uses intentionally subjective reasoning to terminate employees who engage in protected activities, in an effort to shield itself from liability.

### E. The Suspicious Timing and Circumstances of Mr. Gooden's Termination Support an Inference of Pretext.

Within days of Mr. Gooden complaining about race discrimination and defending Kenton Waites, Lhoist suspended Mr. Gooden for behavior the company had encouraged for nineteen years. ROA.1264. The suspension alone is actionable. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 73 (2006) (a thirty-seven day suspension is sufficient to be actionable for a retaliation claim). Within three days

of Mr. Gooden complaining to Mr. Clark about race discrimination on April 5, 2024, Lhoist suspended him again, and then fired him three days after that. ROA.1266, ROA.1465-66. On its own, the close temporal proximity of less than a week "is a strong indicator of pretext." *Jan. v. City of Huntsville*, 74 F.4th 646, 654 (5th Cir. 2023) (discussing temporal proximity of fifteen days). This Court has held that the "combination of suspicious timing with other significant evidence of pretext can be sufficient to survive summary judgment." *Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019). Here, temporal is combined with disparate treatment, disputed allegations, and a pattern of retaliating against employees who complain about discrimination. This is sufficient evidence for a jury to find that Lhoist's proffered reasons for disciplining and terminating Mr. Gooden were pretextual.

## IV. The McDonnell Douglas Framework Does Not Exhaust the Available Modes of Proof.

Finally, even if Mr. Gooden's *McDonnell Douglas* evidence were insufficient—which it is not—the framework "is not the be-all and end-all of proving discrimination." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 352 (5th Cir. 2019) (Costa, J., concurring). "The facts necessarily will vary in [§ 1981] cases and the prima facie proof required in one case is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas*, 411 U.S. at 802 n.13; *Hittle v. City of Stockton*, 145 S. Ct. 759, 762 (2025) (Thomas, J. dissenting); *Ames*, 605 U.S. at 322 (Thomas,

J. concurring).[2] The relevant question is whether, viewing all of the evidence in a light most favorable to Mr. Gooden, a reasonable factfinder could infer discrimination and retaliation. *See Ames*, 605 U.S. at 324 (Thomas, J. concurring) ("A plaintiff who cannot establish a prima facie case at the first step or pretext at the third step can still prevail under Title VII so long as his evidence raises a reasonable inference of unlawful discrimination."). That answer is yes. Lhoist only put White employees in managerial and supervisory positions; Lhoist refused to promote Mr. Gooden despite his interest and near twenty years of experience; Lhoist treated Black employees disparately from non-Black employees in terms of assignments, equipment, and discipline; Lhoist repeatedly treated Mr. Gooden's conduct as problematic only after he engaged in protected activities; Lhoist only ever terminated employees for being "disruptive" when they engaged in protected activities; Lhoist did not produce audio recordings supporting its allegations that Mr. Gooden reacted inappropriately. The *McDonnell Douglas* framework is not necessary to see that this evidence, taken together and in the light most favorable to Mr. Gooden, supports a reasonable inference of discrimination and retaliation.

---

[2] Rule 401 of the Federal Rules of Evidence provides that evidence is relevant if "it has any tendency to make a [material] fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Each relevant fact increases the probability of liability. Returning to Fed. R. Evid. 401 for minimum evidence would be a useful method of analyzing a claim under Fed. R. Civ. P. 56.

## CONCLUSION AND PRAYER

For the foregoing reasons, Mr. Gooden respectfully requests that this Court reverse the District Court's grant of summary judgment and remand for further proceedings. Fact issues exist for a trial before a jury for recovering damages for failing to promote to a lead position, failing to promote to a supervisor position, a first suspension, reduction in hours, a second suspension, and termination, singly and together.

Respectfully submitted,

*/s/ Brian Sanford*

**Brian Sanford**
Texas Bar No. 17630700
bsanford@sanfordfirm.com
**Elizabeth "BB" Sanford**
Texas Bar No. 24100618
esanford@sanfordfirm.com
**Emma Hoffman**
Texas Bar No. 24149862
ehoffman@sanfordfirm.com
**THE SANFORD FIRM**
2711 Hibernia Street
Dallas, TX 75204
Ph: (214) 717-6653
Fax: (214) 919-0113

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing was served on all lead counsel of record in accordance with the Federal Rules of Appellate Procedure on June 3, 2026, via PACER's electronic service.

*<u>/s/ Brian Sanford</u>*

## CERTIFICATE OF COMPLIANCE

In compliance with Federal Rules of Appellate Procedure 28 and 32(g) and Local Rule 5, I hereby certify that this brief contains 7103 words, excluding the portions of the brief exempted by FED. R. APP. P. 32(f).

*<u>/s/ Brian Sanford</u>*